**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY ANTIDORMI,**

                                                                **1:18-cv-1344**
                                        **Plaintiff,**          **(GLS/CFH)**

                        **v.**

**NATIONAL RAILROAD**
**PASSENGER CORP.,**

                                **Defendant.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Shapero Roloff Co., LPA              ANDREW JOHN THOMPSON,
U.S. Bank Centre                     ESQ.
1350 Euclid Ave.
Suite 1550
Cleveland, OH 44115


Flynn & Wietzke, P.C.                MARC T. WIETZKE, ESQ.
1205 Franklin Ave
Suite 370
Garden City, NY 11530

**FOR THE DEFENDANT:**
Littler, Mendelson Law Firm          PAMELA S.C. REYNOLDS,
375 Woodcliff Drive, 2nd Floor       ESQ.
Fairport, NY 14450

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jeffrey Antidormi commenced this action under Title I of the Americans with Disabilities Act[1] (ADA) and Section 504 of the Rehabilitation Act[2] against his employer, defendant National Railroad Passenger Corp. (hereinafter "Amtrak").  (Compl., Dkt. No. 1.)  Pending is Amtrak's motion to exclude Antidormi's expert witness testimony, and Amtrak's motion for summary judgment.  (Dkt. Nos. 38, 40.)  For the following reasons, Amtrak's motion for summary judgment is granted and its motion to preclude Antidormi's expert witness testimony is denied as moot.

## II. Background

### A.    Facts[3]

In October 2003, Antidormi began working for Amtrak as an assistant conductor.  (Defs.' Statement of Material Facts (SMF) ¶ 4, Dkt. No. 40,

---

[1] *See* 42 U.S.C. §§ 12101-17.

[2] *See* 29 U.S.C. § 794.

[3] Unless otherwise noted, the facts are undisputed.

Attach. 8.)  He was eventually promoted to conductor, and stayed in this position until February 2014, when he began working as a baggageman. (*Id.* ¶¶ 4-5.)

Prior to January 2012, the applicable regulations did not address color vision requirements for conductors and assistant conductors.  (*Id.* ¶ 7.)  Throughout 2003 and 2011, Amtrak had its own color vision requirements for conductors and assistant conductors, and Antidormi was certified several times by Amtrak to work in these roles.  (*Id.* ¶¶ 8-9.)

In 2008, Congress passed the Rail Safety Improvement Act of 2008, which "'directed the Federal Railroad Administration ([ ]FRA[ ]) to, among other things, promulgate new safety regulations,'" and, accordingly, in January 2012, "the FRA implemented conductor certification standards." (*Id.* ¶¶ 10-11 (alterations and citation omitted).)  At that time, Anitidormi "was a [c]onductor within the meaning of the FRA's regulations and, therefore, was subject to the regulations."  (*Id.* ¶ 12.)

"An essential function of the role of a [c]onductor and [a]ssistant [c]onductor is the ability to maintain FRA certification."  (*Id.* ¶ 13.)  Among several approved tests for "determining whether a person has the ability to recognize and distinguish among the colors used as signals in the railroad

industry" is the Ishihara plate test.  (*Id.* ¶¶ 16-17.)  Antidormi took, and failed, the Ishihara test.  (*Id.* ¶¶ 28-29.)

> 1.   *Antidormi's Removal from the Conductor Position*

After learning that he failed the Ishihara color vision test, Amtrak removed Antidormi from his conductor position, and Amtrak's medical services sent Antidormi a letter requesting that he "submit additional information from his personal doctor—specifically, an evaluation of color-vision using one of the FRA-accepted tests listed in the regulations."  (*Id.* ¶ 30.)  Antidormi went to his eye doctor, who, after examining him, notified Amtrak that Antidormi "had only scored one correct answer with each eye and was diagnosed with 'Deutanopia (strong Red/Green Color Deficiency).'"  (*Id.* ¶¶ 32-34.)  Antidormi then took Amtrak's color vision field test (CVFT), and, "[o]ut of 90 possible correct responses, [Antidormi] missed 15—all of which were errors involving red or yellow lights."  (*Id.* ¶¶ 35-39.)

After learning of Antidormi's CVFT results, Amtrak's medical director determined that Antidormi was medically disqualified from serving as a conductor.  (*Id.* ¶ 41.)  On December 9, 2013, Amtrak sent Antidormi a letter "explaining that he was medically disqualified from service as a

[c]onductor, and presenting him with several options, including the option to apply for an accommodation through Amtrak's ADA Panel."  (*Id.* ¶ 42.) The "System General Trainmaster also sent Antidormi a letter a few days later confirming that he had failed the color-vision field test and that the medical department determined he was medically disqualified from his job as a [c]onductor."  (*Id.* ¶ 43.)  Antidormi sent a "formal rebuttal" letter, dated December 23, 2013, to Amtrak's system general trainmaster, stating that "he was in the process of making another eye doctor appointment and would forward the results when he had them."  (*Id.* ¶¶ 46-47.)

After visiting with another eye doctor, Antidormi sent Amtrak a letter regarding his eye exam stating that he was "deuteranomalous (mild form of color deficiency)," and that he "would be able to see colors but not see green the way 'normals' do."  (*Id.* ¶¶ 48-51.)  No test results were attached to the letter, nor did the letter indicate what type of color-vision test was performed.  (*Id.* ¶ 52.)  Amtrak's medical director emailed the system general trainmaster "stating that the letter merely confirmed [Antidormi's] color deficiency," and, thus, "there was no change to the decision to deny [Antidormi's] medical certification as a [c]onductor."  (*Id.* ¶¶ 53, 54.)

On January 31, 2014, Amtrak's system general trainmaster informed

Antidormi of this decision.  (*Id.* ¶ 55.)  "[T]he letter confirmed that Amtrak

had deferred making a final decision regarding [his] [c]onductor certification

until Amtrak's Medical Director received and reviewed the results of the

additional eye doctor evaluation that [Antidormi] had stated in his [earlier]

letter he would be providing," but such additional evaluation "did not

provide any basis to overturn the original determination that [Antidormi] had

failed to meet the vision acuity standards of 49 C.F.R. § 242.117."  (*Id.*

¶¶ 56, 57.)

> 2. *Antidormi's Petition and the Operating Crew Review Board's*
> *Remand*

In April 2014, Antidormi filed a petition with the FRA's Operating

Crew Review Board (hereinafter "the Board") for review of Amtrak's denial

of his certification as a conductor.  (*Id.* ¶ 64.)  In February 2015, the Board

issued an interim order, ordering Amtrak to "clarify its rationale and

authority for denying" Antidormi's certification."  (*Id.* ¶ 65.)  Amtrak

responded, and Antidormi responded to Amtrak's submission.  (*Id.*)

In May 2016, the Board remanded the matter to Amtrak and ordered

it to affirm that Antidormi's color vision test was an accepted test under the

federal regulations; "ensure that the Medical Examiner had or would

consult with a railroad officer to determine whether [Antidormi] could

perform safely as a [c]onductor with special conditions attached to his

certification"; require the medical director to state the basis for his

determination in writing; and "issue a 'new decision' regarding [Antidormi's]

certification, following the 'proper procedures and requirements set forth in'

the federal regulations."  (*Id.* ¶ 66.)

### 3.    *Antidormi's Request for an Accommodation*

"During the time that Antidormi's December 23, 2013 rebuttal letter

was under review by Amtrak, [he] requested an accommodation under

Amtrak's ADA accommodation process," seeking to be placed in the

assistant conductor position.  (*Id.* ¶ 75.)  He was informed that he was

medically disqualified from both the conductor and the assistant conductor

positions because once an assistant conductor has been promoted to a

conductor position, they cannot return to the assistant conductor position

as it would violate the Collective Bargaining Agreement (CBA).  (*Id.* ¶¶ 62,

76.)

Amtrak and Antidormi worked to find an open position that he would

be medically qualified for, and identified a position in Amtrak's baggage

department.  (*Id.* ¶¶ 76-77.)  Antidormi was offered a position as a "Red

Cap/Baggageman," which did not have color vision requirements.  (*Id.*
¶¶ 79-80.)  Antidormi did not have to participate in the interview process
prior to being offered the position because "it was an accommodation
provided through Amtrak's ADA Panel review process."  (*Id.* ¶ 81.)  He
officially began working as a baggageman in February 2014.  (*Id.* ¶ 82.)

In March 2017, Antidormi filed a Charge of Discrimination with the
Equal Employment Opportunity Commission (EEOC) alleging that, "[o]n
September 22, 2016 System General Trainmaster refused to
accommodate [him] within the position of [c]onductor and [he] was
reassigned to work as a baggage handler."  (*Id.* ¶¶ 89-90 (internal
quotation marks omitted).)

## B.   Procedural History

Antidormi commenced this action on November 15, 2018 asserting
an ADA retaliation claim, ADA discrimination claim, and a Section 504
discrimination claim.  (Compl.)  Amtrak moved to dismiss the complaint for
failure to state a claim, (Dkt. No. 9), which the court granted in part and
denied in part.  (Dkt. No. 20).  Specifically, the court dismissed Antidormi's
ADA retaliation claim, as well as his ADA and Section 504 discrimination
claims based on conduct occurring prior to May 18, 2016 or not contained

within the EEOC charge.  (*Id.* at 17.)  In doing so, the court, in its

September 2019 Memorandum-Decision and Order, explained that "the

only adverse employment actions that may form the basis of Antidormi's

[ADA and Section 504 discrimination] claims occurred on September 22,

2016, when Amtrak denied his certification requests and demoted him to

baggage handler."  (Dkt. No. 20 at 10-11 (citing Compl. ¶¶ 23, 32a, 33a).)

Amtrak now seeks summary judgment as to the remaining ADA and

Section 504 discrimination claims.  (Dkt. No. 40.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 56 is well settled and

will not be repeated here.  For a full discussion of the governing standard,

the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F.

Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489

F. App'x 500 (2d Cir. 2012).

### IV.  Discussion

Amtrak seeks summary judgment as to Antidormi's remaining claims

for untimeliness and on the merits.  (Dkt. No. 40, Attach. 7 at 17-31.)  In

response, Antidormi contends that his claims are not time-barred because

Amtrak denied him certification on September 22, 2016 after he filed an

administrative appeal with the Board, and "[t]his denial was a discre[te] act of discrimination that gave rise to [his] timely discrimination claims"; he has presented a prima facie case of discrimination; Amtrak did not have a legitimate business justification for denying Antidormi his certification; and such decision was a pretext for discriminatory animus.  (Dkt. No. 47 at 3-15.)  As discussed below, because no adverse employment action occurred after May 18, 2016, Antidormi's discrimination claims are untimely.

## A.   ADA Discrimination Claim

A plaintiff "generally must file a charge of discrimination with the EEOC within three hundred days after the alleged unlawful employment practice occurred."  *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (internal quotation marks and citations omitted).  Here, Antidormi's EEOC Charge was filed on March 14, 2017.  (Dkt. No. 1, Attach. 1.)  Thus, as noted above and in the court's prior decision, any act that occurred prior to May 18, 2016 is time-barred.  Because the only post-May 18, 2016 conduct alleged in Antidormi's complaint is that he was denied certification and demoted to baggage handler on September 22, 2016, (Compl. ¶¶ 23, 32a, 33a), the disputed timeliness issue concerns Amtrak's September 22,

10

2016 letter and whether it is a discrete act of discrimination.  If the September 22, 2016 letter constitutes a discrete act, then Antidormi's March 14, 2017 EEOC Charge would be timely.  However, for the reasons explained herein, Amtrak's September 22, 2016 letter does not constitute a discrete act, and, thus, Antidormi's ADA discrimination claim is untimely.

Amtrak maintains that the allegedly discriminatory act at issue here is Amtrak's decision to deny Antidormi conductor certification, which occurred on January 31, 2014, and/or when Antidormi was placed in the baggageman position in February 2014, and that its September 22, 2016 letter was merely a restatement of these decisions.  (Dkt. No. 40, Attach. 7 at 21.)  Thus, Amtrak contends, nothing that occurred in September 2016—or any time after May 18, 2016—resulted in an adverse employment action.  (*Id.* at 18-21.)

In response, Antidormi argues that his claims are not time-barred because his administrative appeal was a "distinct and renewed request to be certified as a conductor," wherein he "specifically requested that he be certified as a [c]onductor . . . or that he be provided a conditional certification."  (Dkt. No. 47 at 13-15.)  According to Antidormi, Amtrak's

September 2016 letter was a "separate discriminatory act" and constituted a "new decision" to deny him his certification.  (*Id.*)  Thus, in Antidormi's view, because this "discre[te] act of discrimination" occurred within 300 days of the filing of Antidormi's EEOC charge, his ADA discrimination claim is timely.  (*Id.*)

Identifying when the limitations period begins to run on a discrimination claim requires determining "when the [employment] decision was made and [the plaintiff] was notified."  *Del. State Coll. v. Ricks*, 449 U.S. 250, 259 (1980).  "Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "The charge, therefore, must be filed within the . . . 300–day time period after the discrete discriminatory act occurred."  *Id.*  "An adverse employment action is a 'materially adverse change in the terms and conditions of employment.'"  *Atkins v. Rochester City Sch. Dist.*, 764 F. App'x 117, 119 (2d Cir. 2019) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  "Examples of adverse actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities.'"  *Id.* (quoting

12

*Galabya*, 202 F.3d at 640).

The two events identified as the only adverse actions that may potentially form the basis of Antidormi's claims—Amtrak's denial of his conductor certification, and his demotion to baggage handler—fail because they occurred well before May 18, 2016, were sufficiently final so as to trigger the limitations period, and nothing in Amtrak's September 2016 letter altered such determinations.

    1.    *Denial of Certification & Failure to Provide Antidormi With a Conditional Certification to Work as an Assistant Conductor*

Antidormi made the following requests in his petition to the Board: "That Amtrak be required to provide [Antidormi] with an additional field test under conditions that permit him to prove that he can safely perform his duties as [c]onductor,"[4] or, alternatively, "that Amtrak be required to reverse its decision to unconditionally deny [him] certification as [c]onductor and that he be conditionally certified to work as an [a]ssistant [c]onductor, where, by Amtrak's own [s]tandards he would not be required

---

    [4] To the extent this request is construed as a request for an accommodation, because Antidormi does not argue as such in his opposition to Amtrak's motion, and because there is no evidence in the record suggesting that he made such a request as an accommodation, the court need not, and does not, analyze it.

to interpret railroad signals." (Dkt. No. 47, Attach. 4 at 6.)

Antidormi's request to "reverse" Amtrak's decision to deny him conductor certification and a conditional certification to work as an assistant conductor does not restart the statute of limitations. Indeed, Antidormi previously made these same requests, and Amtrak unequivocally denied such requests on January 31, 2014—well before its September 22, 2016 letter. Specifically, as to his conductor certification request, Amtrak's January 31, 2014 letter stated, in relevant part: "per my earlier letter dated December 17, 2013, Amtrak must deny your certification status as a Passenger conductor for Amtrak. This decision is effective today, January 31, 2014." (*Id.* at 15-16.) As to his assistant conductor request, Amtrak's letter stated, in relevant part: "To the extent you are arguing that you should be able to work as an [a]ssistant [c]onductor despite your inability to maintain your [c]onductor certification, this is an issue that must be taken up with your union, since maintenance of certification status is mandated by your [CBA]." (*Id.*) It is also undisputed that once an assistant conductor is certified, medically qualified, and promoted to a conductor position, he "may not return to the [a]ssistant [c]onductor position because it would violate the CBA." (Def.'s

14

SMF ¶ 62.)

Indeed, "[i]t is settled that an employee may not extend or circumvent the limitations period by requesting modification or reversal of an employer's prior action." *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 131 (1st Cir. 2009) (citing *Ricks*, 449 U.S. at 261 n.15 ("Mere requests to reconsider . . . cannot extend the limitations periods applicable to the civil rights laws.")); *Castiblanco v. Am. Airlines, Inc.*, No. 17-cv-5639, 2019 WL 4751880, at *9 (E.D.N.Y. Sept. 29, 2019) (noting that a request for reconsideration of a prior denial will not restart the statute of limitations clock).

Thus, because Amtrak's January 31, 2014 letter unequivocally denied Antidormi his conductor certification and assistant conductor requests, the statute of limitations began to run on January 31, 2014.[5]  *See Ricks*, 449 U.S. at 261 (holding that the starting point for the deadline

---

[5]  The court is aware of the Board's order to Amtrak to "issue a new decision regarding [Antidormi's] certification, following the proper procedures and requirements," (Dkt. No. 47, Attach. 2 at 10), but notes that Antidormi's conclusory argument that such order supports the conclusion that Amtrak's September 2016 letter constituted a "new decision," thus making his filing timely, (Dkt. No. 47 at 14-15), is unavailing.  Indeed, Antidormi has offered no support for such assertion, and, for the reasons described herein, it is of no moment what the Board factored into the administrative appeals process.

occurs when a plaintiff has notice of an official, i.e., not "tentative,"
decision); *Smith v. United Parcel Serv. of Am., Inc.*, 65 F.3d 266, 268 (2d
Cir. 1995) ("[T]he limitation period begins to run on the date when the
employee receives a definite notice of the termination . . . [and] for the
notice to be effective, it must be made apparent to the employee that the
notice states the official position of the employer." (internal quotation marks
and citations omitted)); *Arias-Mieses v. CSX Transp., Inc.*, 630 F. Supp. 2d
328, 332 (S.D.N.Y. 2009) (finding that the statute of limitations period
commenced on the date that the railroad employee received his
termination letter, and his commencement of a grievance procedure in no
way suggested that the termination decision was tentative).

To the extent Antidormi's request to "reverse" Amtrak's decision to
deny him conductor certification and to deny him a conditional certification
to work as an assistant conductor can be construed as a renewed request
for an accommodation, such request still does not form the basis of a
timely ADA claim.[6]

_____

   [6] The court is not persuaded that Antidormi made a renewed
request for accommodation in his administrative appeal. Rather, the
requested relief is simply a request for reconsideration of Amtrak's
previous denials of his certification and to work as an assistant conductor.
Nonetheless, even if Antidormi's administrative appeal can be construed
as a renewed request for an accommodation, it does not restart the

Indeed, Antidormi requested an accommodation to be an assistant conductor on January 3, 2014, (Compl. ¶ 19; Dkt. No. 40, Attach. 6 at 45), and, as explained above, Amtrak's January 31, 2014 letter explained that, "[t]o the extent [Antidormi was] arguing that [he] should be able to work as an [a]ssistant [c]onductor despite your inability to maintain your [c]onductor certification, this is an issue that must be taken up with your union, since maintenance of certification status is mandated by your [CBA]."  (Dkt. No. 47, Attach. 4 at 15-16.)  Further, it is undisputed that Anitdormi "requested an accommodation . . . that he be placed in the [a]ssistant [c]onductor position," and that, in response, he "was informed that he was medically disqualified from the [c]onductor and [a]ssistant [c]onductor positions . . . so he engaged with Amtrak to identify an open position that he was not medically disqualified from performing."  (Def.'s SMF ¶¶ 75-76.)

As such, Antidormi was made aware of the denial of his requests well before the September 22, 2016 letter.  *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) (holding that an employer's rejection of an employee's proposed accommodation for religious practices

_____

statute of limitations clock.

17

does not give rise to a continuing violation because "[t]he rejection of a proposed accommodation is a single completed action when taken, quite unlike the 'series of separate acts' that constitute a hostile work environment and 'collectively constitute' an unlawful employment practice. Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act." (citing *Morgan*, 536 U.S. at 114); *Ross v. New York*, No. 15-CV-3286, 2017 WL 354178, at *2 (S.D.N.Y. Jan. 24, 2017) ("Though the request was renewed and again rejected . . . the statute of limitations runs from the initial request, as repeated requests for the same accommodation or requests for reconsideration of a denial of an accommodation do not restart the clock under the ADA." (citing *Elmenayer*, 318 F.3d at 134-35)).

  2. *Demotion to Baggage Handler*

  To the extent Antidormi is arguing that Amtrak demoted him to baggage handler in September 2016, such assertion is belied by the record.  Indeed, on February 7, 2014, Antidormi requested to be placed in the baggage department.  (Dkt. No. 40, Attach. 6 at 47.)  On February 11,

2014, Amtrak responded to this request and stated it would "assist in reassigning [Antidormi] to a vacant position that meets [his] qualifications and satisfies [his] restrictions."  (*Id.* at 49-51.)  And it is undisputed that Antidormi began working as a Baggageman, as an accommodation, on or around February 20, 2014.  (Def.'s SMF ¶¶ 5, 77, 80-82.)  As such, to the extent Antidormi relies on his demotion to baggage handler as a basis for an adverse employment action occurring in September 2016, because the demotion occurred well before September 2016, it is untimely and does not form the basis of his ADA discrimination claim.

**B.    Section 504 of the Rehabilitation Act Discrimination Claim**

Unlike the ADA, the Rehabilitation Act does not contain a specific statute of limitations.  *See Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992).  In the absence of an express statute of limitations, the Second Circuit has held "that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions."  *Id.* at 127.  In New York, the statute of limitations for personal injury actions is three years.  *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002); N.Y. C.P.L.R. § 214(5).  Thus, because Antidormi filed his complaint on November 15, 2018, he may only assert his claims

19

under the Rehabilitation Act as to Amtrak's actions after November 15,

2015.  However, as discussed above, because Amtrak's September 22,

2016 letter is the only alleged adverse employment conduct forming the

basis of Antidormi's claims, and because such letter is not, in fact, a

discrete act of discrimination, Antidormi's Section 504 of the Rehabilitation

Act claim is untimely.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Amtrak's motion for summary judgment (Dkt. No. 40)

is **GRANTED**; and it is further

**ORDERED** that Amtrak's motion to preclude Antidormi's expert

witness testimony (Dkt. No. 38) is **DENIED as moot**; and it is further

**ORDERED** that Antidormi's complaint (Dkt. No. 1) is **DISMISSED**;

and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

August 4, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge